OF

## THE STATE OF NEW JERSEY.

## 1922.

EDWIN ROBERT WALKER, ORDINARY.

EUGENE STEVENSON, EDMUND B. LEAMING, VIVIAN M. LEWIS,
JOHN H. BACKES, JOHN GRIFFIN, JOHN E. FOSTER,
MALCOLM G. BUCHANAN AND JAMES F.
FIELDER, VICE-ORDINARIES.

In re estate of THEODORE N. VAIL, deceased.

[Decided March 28th, 1922.]

The payment to the comptroller of the treasury of a five per cent. tax based upon the full value of the shares of stock in a New Jersey corporation, owned by a non-resident decedent to secure a waiver for the transfer of such shares in advance of the levying by the comptroller of the tax to which the estate is liable, is a payment of the tax, *pro tanto* if the assessment ultimately made is greater than the amount so paid and entitling the executor to the surplus if such advance payment is greater than the assessment when made; and such payment—that is, payment to secure waiver, if made within six months from the death of decedent,

entitles the executor to the five per cent. discount on the tax allowed by
the Transfer Inheritance Tax act (*P. L. 1909 ch. 228* § *5*, as amended by
*P. L. 1918 ch. 283*), and prevents the running of interest on the tax *pro
tanto* or totally, as the amount of the tax may be less or greater than the
amount of the advance payment, if the tax is levied a year or more after
the death of decedent; and it seems that interest would not run for
another reason, namely,· because the time of the assessment and levy
were not attributable in anywise to the executors.

---

On petition for revision and readjustment of inheritance tax.

*Mr Edward Thomas Moore,* for the petitioners.

*Mr. William Newcorn,* assistant attorney-general, *contra.*

WALKER, ORDINARY.

Theodore N. Vail died April 16th, 1920, domiciled in Ver-
mont. He left a will in which he appointed· the petitioners
executors.

On July 31st, 1920, in order to secure waivers for the transfers
of certain shares of stock of the estate the executors paid five per
cent. of the full value thereof to the comptroller of the treasury
of this state, amounting to the sum of $11,602.50, and on August
6th, 1920, in order to secure waivers for the transfer of certain
other shares, they paid five per cent. of the full value thereof to
the comptroller, amounting to the sum of $12.338.82, the total
being $23.941.32. On October 12th, 1920, the executors made a
return for taxation to the comptroller and transmitted therewith
a letter in which they advised that official that they were not re-
mitting anything on account of the tax, as they had already paid
the sum of $23,941.32 for consents to transfer of certain shares.
naming them, as they computed the tax actually payable by the
estate, less the five per cent. discount allowed under section 5
of the statute if the tax is paid within six months, to be less than
the amount already paid. The payments remitted to the comp-
troller were made within six months of the death of Mr. Vail.

On September 9th, 1921, the comptroller notified the executors
in writing of the amount of the tax claimed by the state. It in-
cluded interest as for deferred payment and totaled $22,152.62,

leaving an amount to be refunded out of the $23,941.32 of $1,788.70.

The executors claim that because of the payment of the $23-941.32 within six months from the death of the decedent, they should be allowed a discount of five per cent. from $21,150.16, the amount of the tax assessed, and that the interest charged thereon is unlawful and should be set aside.

The Transfer Inheritance Tax act (*P. L. 1909 ch. 228,* as amended by *P. L. 1918 ch. 283*) provides that all taxes imposed shall be due and payable at the death of the testator, &c., and if the same are paid within six months from such death, a discount of five per cent. shall be allowed and deducted; but if not paid within one year interest at ten per cent. per annum shall be charged after that date.

It will be observed that Mr. Vail died April 16th, 1920, and that within six months thereafter the $23,941.32 was paid to the comptroller by his executors. It was not until September 9th, 1921, that the assessment was made, more than a year after the death of decedent. And this, it is said, was due to the pendency of litigation in another case having a bearing on this one, which case, however, was not cited. The executors were in nowise responsible for this.

The question for solution on this record is, Shall the estate pay interest on the tax as assessed by the comptroller or shall the executors be allowed a discount and deduction of five per cent. for payment of the tax within six months of Mr. Vail's death, and this in turn depends upon whether the $23,941.32 was a payment of the tax or a deposit to secure a transfer of stock. This calls for a construction of *P. L. 1914 ch. 58,* a supplement to the Transfer Inheritance Tax act

The supplement provides that whenever a foreign executor, &c., shall desire to transfer stock in a New Jersey corporation, owned by a non-resident decedent, it shall be lawful for the comptroller to issue a waiver, &c., upon such executor *paying* to the comptroller a five per cent. tax based upon the full value of the shares; and provision is made that when the exact tax which the stock is liable for shall have been ascertained the comptroller shall pay it to the treasurer; but if the stock was not

liable to the full five per cent. tax, the comptroller shall *pay* to the executor the amount *overpaid.*

The assistant attorney-general contends that the act of 1914 does not provide for the payment of a tax, but only the method whereby waivers for the transfer of stock in advance of payment of transfer inheritance tax may be procured. I am unable to agree with this view. By the terms of the original act (section 18) the comptroller assesses and fixes the cash value of the estate and levies the tax to which it is liable, and the tax (at the rate of five per cent. of the clear market value of the property, except as otherwise provided) shall be paid to the state treasurer. Now, if there be no preliminary transfer the tax is payable directly by the estate's representative to the treasurer, but in case a transfer is sought before the comptroller assesses and levies the tax, payment is made in advance to him, and when the exact tax is ascertained the comptroller pays to the treasurer—that is, transfers to him, out of the advance payment required by the act, the amount of the tax. If the amount advanced to the comptroller were not a payment, but a mere deposit by way of security, then surely a method of repayment would have been provided after proper adjustment was made. But, be it observed, the estate does not get the money back after paying it to the comptroller, unless there be a surplus, and then only the surplus. Not only by the nature of the transaction, but by the very terms of the statute, the deposit with the comptroller is a payment, in advance, it is true, but none the less a payment.

If the tax paid in advance to secure a waiver for transfers were less than the total amount of the tax as finally assessed and levied, the executors would be entitled to the five per cent. discount on the tax so paid in advance, *pro tanto,* and if an advance payment amounts to the sum of the tax when levied, or more, then the executors would be entitled to a discount on the total amount of the tax; and if the tax is not assessed and levied until a year or more after the death of decedent, the advance payment would prevent the running of interest even after such levy *pro tanto* or totally, as the amount of the tax might be less or greater than the amount of the advance payment; and if the tax were not levied for a year or more after decedent's death, then, if

the tax were promptly paid after levy, interest would not run for another reason, namely, because the belated date of assessment and levy were not attributable in anywise to the executors.

The result reached is that the discount claimed must ·be allowed and the interest retained must be refunded.